AMÉRICA ORTIZ ROMEU, Appellant, *v.* THE REGISTRAR OF PROPERTY OF SAN GERMÁN, Respondent.

No. 1336.    Submitted April 17, 1961.—Decided April 26, 1961.

*Carlos García Méndez* for appellant.  The Registrar appeared by brief.

Mr. Justice Blanco Lugo delivered the opinion of the Court.

By deed No. 2 of May 7, 1938, executed before Notary Vicente Hita, Jr., América Ortiz Romeu acquired, as a gift, an undivided share in several properties.  The other shares were donated to her other brothers.  By said deed the donors, Juan Cancio Ortiz and Matilde Romeu, appellant's parents, established the condition of "mutual preference between co-owners in case of sale or encumbrance of their respective shares unless none of them be interested in the purchase or lien."  Subsequently the existing community of said properties was divided and appellant was awarded, in payment of her share, a farm of forty-five and two-third cuerdas, situated on the ward of Palmarejo, Lajas.  At the time of the recording of the deed of partition, the Registrar made it clear that said farm was subject to the condition hereinbefore copied.

The appellant filed a petition to the Registrar of Property of San Germán, requesting him to cancel the condition affecting the farm awarded to her when the community was divided, for the following reasons:

"A.  Because said condition, even though erroneously inserted at the time of recording the interests acquired by appellant by inheritance according to deed No. 2 previously mentioned, was cancelled and rendered ineffective when the community relating to said donated properties was divided and the parcel previously described was awarded to the appellant.  Such condition referred to the alienation or encumbrance of the shares donated and it was in favor of the co-owners, and since the community was dissolved such shares and co-owners ceased to exist.

"B. Because such condition being a personal one, should not have been entered in the Registry and it should have been totally cancelled in accordance to the ruling of the Honorable Supreme Court, laid down in the cases of *Rullán* v. *Registrar,* 67 P.R.R. 659 and *López* v. *Registrar,* 67 P.R.R. 904."

The Registrar denied the cancellation requested and to that effect extended a note of refusal that reads as follows:

"Cancellation is hereby DENIED of the condition mentioned in the preceding document, because it is noted that it does not appear from the Registry nor is it established by any document that the parties interested in said condition have waived the mutual preference right in case of sale or encumbrance of their respective interest, therefore a cautionary notice is entered for the statutory period in favor of the interested parties at folio 1, back of volume 69 of Lajas, property No. 2341, in a marginal note of its first inscription."

An appeal was taken to this Court against the note of refusal.

Repeatedly we have held that only property rights affecting real property may have access to the Registry of Property except such cases where it is otherwise provided by law. It seems clear that the personal rights are not recordable. II Roca Sastre, *Derecho Hipotecario* 207 (1954 Ed.); De Casso, *Derecho Hipotecario o del Registro de la Propiedad* 289 (4th Ed., 1951); Téllez Miquélez, *Legislación Hipotecaria* 45 (1949). Therefore, § 28 of the Mortgage Law (30 L.P.R.A. § 858) specifically provides that "the obligation of transferring to another person the ownership of real property or of a property right, or of creating on either a right of the same character, shall not require record. Nor shall the obligation to execute in the future any of the contracts included in the preceding articles require record, unless in either case the performance of the personal obligation shall be secured by an encumbrance on real property." [1]

---

[1] The Mortgage Law Regulations of Spain (1944) provides in its § 9 that "the obligation of creating, transferring, modifying or extinguishing the ownership or real right over any property are not recordable, nor

It was decided in *Rullán* v. *Registrar*, 67 P.R.R. 658 (1947), that the cancellation of a clause mentioned in the recording of a real property which provided that "when-- ever . . . . . should decide to sell the parcel covered by the within deed of sale, she shall be bound to offer it for sale to the vendors, at the same price which she is paying there- for," was proper since it was a mere promise of sale. We added that such promise constitutes a personal right that should not have been mentioned in any way in the Registry. *Cf. Rossy* v. *Super. Ct.; Heirs of Lloréns, Ints.*, 80 P.R.R. 705 (1958). Likewise, in *López* v. *Registrar*, 67 P.R.R. 904 (1947), we held that since it was a personal right which the beneficiary was not entitled to record in his favor, the mention of a condition in a deed of sale of a theater to the effect that "the first floor box, No. . . . . . will continue being occupied as usual by the vendor . . . . . and his family," should be cancelled. More recently, because we considered them to be property rights, we indicated that the cancellation of the recorded restrictions limiting the use of certain lots within an urbanization for commercial and clubhouse purposes could not be allowed insofar as they were beneficial to the rest of the residential lots. *Baldrich* v. *Registrar*, 77 P.R.R. 700 (1954).

■■ Now, as pointed out by Jerónimo González, an authority on mortgages, "there exists a group of juridical figures of the undifferentiated type which must be dragged to the obligational field or to that of the real property." [2] This position is based on the premise already accepted in Puerto Rico in the aforesaid case of Baldrich, *supra*, that "the legislation now in effect does not contain an exhausting

---

the obligation to execute in the future any of the contracts included in the preceding sections, nor in general any other obligation or personal rights, without prejudice that in each of these cases the real guarantee constituted to insure its fulfilment be recorded or a notice entered when- ever proper, in conformity with Section 42 of the Act."

[2] *Sobre La Inscripción de montes públicos*, Revista Crítica de Derecho Inmobiliario 275 (1925).

category of property rights, the interested parties being able to regulate others of the same nature as those enumerated in the Act, and modify, of course, or in the future, *some of the powers of ownership.*" [3]   The existence of certain rights which depending upon their configuration, partake of a personal or real nature, cannot be ignored.   This is what has been earmarked as "intermediate zones of interference or juridical semi-obscuredness, in which the personal subtlely infiltrates as a phosphorescence, through the real or in which the real strengthens with its erga omnes potentiality the obligatory ties." [4]   Among these rights we find the right of pre-emption.[5]

Having briefly exposed the principles that should be considered in order to decide the problem before us, there only remains for decision whether the clause or condition whose cancellation is sought involves a conventional real right of pre-emption or a modification of the power to dispose of the dominion title which, partaking of a real nature, was recordable.

In order to consider the conventional right of pre-emption as a property right, it is necessary that it be stated in its title of constitution and hence, it is necessary that the title owner should not only enjoy the preference to acquire the real property but also that he may claim it from whomever might acquire it from the obligated person.   That is, the title must show that no alienation may be considered as conclusive with respect to the record owner of the right of acquisition.[6]   If we examine briefly the condition imposed

[3] Decision of the General Directorate of Registries of March 1, 1939.

[4] II-Ramón de la Rica y Arenal, *Comentarios al Nuevo Reglamento Hipotecario* 25 (1949 ed.).

[5] Castán defines right of pre-emption as "the right of a person to have *preference* for the acquisition of a thing in the event the owner wishes to sell it."   (See, II-Casso y Cervera, *Diccionario de Derecho Privado* 3758.)

[6] On the right of pre-emption, whether real or personal, see, III Ramón Roca Sastre, *Derecho Hipotecario* 5-23 (5th Ed., 1954).

by the donors and even considering that the case before us is an imperfect modality of the right of pre-emption, it should be noted immediately that the preference spelled by its terms does not reach third parties and it simply creates obligational ties of a personal nature between the co-owners. On the other hand, if there were any doubt on this particular, exegesis favors a restrictive interpretation. In a decision of January 28, 1927 of the General Directorate of Registries,[7] it is said: "Against the admission of real property rights patterned on the type of a preference right . . . there exist grave reasons that equally impose a restrictive interpretation."

On the other hand, such clause being considered as a restrictive condition of the *ius disponendi* of an immovable, its registral survival is equally not justified, once the state of indivision or community of property that gave it life, disappears. As it may be seen, the donors simply established a reciprocal preference among the co-owners in case of sale or encumbrances [8] of their *shares* for the purpose of preventing the participation of strangers [9] in the community that was created among the brothers and sisters by virtue of the donation. But once the community of property in question ceased, as well as in the others, object of donation, the reason for such preference disappears by the *expression of the will* of the only ones interested.[10] The

---

[7] XIV *Revista de Derecho Privado* 106 (1927).

[8] Obviously by encumbrance it was meant alienation.

[9] As one delves into the purposes of the donors—preservation of estate among the members of the family—the impropriety of the preference in view of the provisions of the Civil Code as to the legal redemption among co-owners, which attains the same end and even when the property or any interest therein has passed to the hands of a third party is clear. Section 1412 of the Civil Code (31 L.P.R.A. § 2922); *Rosaly v. Ríos*, 63 P.R.R. 826 (1944); *Central Pasto Viejo v. Roig et al.*, 33 P.R.R. 436 (1924), affirmed in 6 F.2d 106 (C.C.A. 1, 1925).

[10] See the following decisions of the General Division of Registries published in *Revista de Derecho Privado*, volume and page indicated: December 31, 1930 (Vol. XVIII, p. 249); May 7, 1929 (Vol. XVI, pp. 342, 344) and November 7, 1927 (Vol. XV, p. 62). One of the effects

waiver by the interested parties to which the refusal note refers would be entirely superfluous by reason of their eloquent expression upon dividing the community and making specific adjudications in payment of their respective interests in all the property possessed in common.

In view of the foregoing, the registrar's note will be reversed.

of the division of the common property in relation to the co-owners is "to understand, by operation of law, that each participant in the common property has possessed exclusively during the indivision that part which, upon the dissolution of the common property, corresponds to him." Guaroa Velázquez, *Los Derechos Reales Principales Según la Legislación y la Jurisprudencia Puertorriqueña* 149 (1937 ed.). See, also, J. Beltrán de Heredia, *La Comunidad de Bienes en Derecho Español* 358 to 369 (1954 ed.); Antonio M. Borrel y Soler, *El Dominio Según el Código Civil Español* 232 *et seq.* (1948 ed.).